**EXHIBIT N**

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE SAN JUAN

| | |
|---|---|
| GEB DEVELOPMENT CORP., EL SR. EFRAIN RIVERA SOLER, SU ESPOSA LA SRA. BRENDA NIEVES Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Demandante<br><br>vs.<br><br>ERLUKA, INC. CAMINOS TERRAVERDE, SE, NEWPORT BONDING, DORAL BANK Y EL SR. CARLOS GONZÁLEZ JUNTO CON SU ESPOSA LA SRA. NITZA BARRETO Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Demandados | CIVIL NÚMERO  803<br><br>KAC05-8146<br><br>SOBRE:<br><br>INCUMPLIMIENTO DE CONTRATO, COBRO DE DINERO Y DAÑOS Y PERJUICIOS |

**DEMANDA**

AL HONORABLE TRIBUNAL:

Comparece la demandante, GEB DEVELOPMENT GROUP, CORP (en adelante GEB), y los esposos Rivera-Nieves por conducto de la representación legal que suscribe, y respetuosamente expone, alega y solicita:

**BREVE INTRODUCCIÓN**

En o alrededor del 17 de octubre de 2002 y 3 de septiembre de 2003, GEB Development, Corp., (en adelante GEB), por conducto de su presidente el señor Efraín Rivera Soler, suscribió ciertos contratos para la construcción de los proyectos Camino Terraverde y Chalets Paseo Real, el primero en Trujillo Alto y el segundo en Río Piedras.

Simultáneamente con la construcción de estos proyectos, el Sr. Carlos González solicitó a GEB y el Sr. Rivera que hiciera ciertas remodelaciones para él personalmente. Las remodelaciones serían en la residencia y en la oficina del Sr. González. Pasado algún tiempo el Sr. Rivera notó que los pagos por las reparaciones en la casa y oficina del Sr. González parecían que iban a ser pagados de los proyectos de construcción. El Sr. Rivera informó a González que él (Rivera) prefería recibir el pago en plazos pero que los pagos



salieran de González en su carácter personal. El 8 de agosto de 2004, el Sr. Rivera hizo una llamada al Sr. González solicitándole el pago adeudado por los trabajos hechos para él personalmente, que en ese momento sumaban cerca de $83,000.00 y Gonzál3ez se molestó muchísimo. Es luego de este evento que González, utilizando el poder que como socio en las compañías de desarrollo Terraverde y Erluka, comenzó un patrón de conducta en claro menosprecio a los contratos, mala voluntad, mala fe, atropellante y amenazante contra GEB y los esposos Rivera-Nieves.

Al presente GEB fue declarada en incumplimiento (default) en ambos contratos de una manera ilegal, contraria al contrato y de mala fe por parte de los dueños de los proyectos, las codemandadas Caminos Terraverde, S.E., (en adelante Terraverde) y Erluka, Inc., (en adelante Erluka), GEB se vió obligada a salir de la obra y esta situación ha causado sustanciales daños económicos a la parte demandante. La salida abrupta, ilegal, de mala fe y en menosprecio al contrato de GEB de las obras, como consecuencia de las acciones, conducta negligente y malintencionada de las demandadas ocasionó una avalancha de demandas por diferentes suplidores y subcontratistas de GEB. Al día de hoy las demandadas adeudan dinero por trabajo hecho y aceptado conforme a contrato, así como sumas por retenido, *extended overhead* y otros daños.



Haciendo acopio de los derechos que le asisten, GEB presenta esta demanda con el propósito de obtener el reembolso de todos los gastos adicionales, indemnización por daños sufridos por los co-demandados haber incumplido los contratos suscritos y dinero que le adeudan a éstos.

## LAS PARTES

1. GEB es una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, dedicada a actuar como contratista general en obras de construcción, cuya dirección es PO Box 363842, San Juan, Puerto Rico 00936-3842, y cuyo número de teléfono es el 787-727-2993. El dicha corporación pertenece a los esposos Rivera-Nieves, quienes son mayores de edad, casados entre sí, comerciantes y vecinos de San Juan, Puerto Rico. La dirección de estos es la misma de GEB.

GEB V. ERLUKA Y OTROS
DEMANDA
PAG. 3

2. Terraverde es una sociedad especial creada al amparo de las Leyes del Estado Libre Asociado de Puerto Rico. Por información y creencia, sus socios son el señor Carlos González y el señor Enrique Santiago. La dirección de dicha entidad es PO BOX 5252, Carolina, PR 00984-5252; El número 462 de la Calle Cesar González, San Juan, PR 00918. Terraverde se dedica, por información y creencia, al desarrollo de obras de construcción.

3. Erluka es una corporación organizada bajo las Leyes del Estado Libre Asociado de Puerto Rico, dedicada a actuar como contratista general en obras de construcción, cuya dirección es el PO BOX 194755, San Juan, PR 00919-4755 y el Edificio 207 Calle del Parque Piso 5, Santurce, P.R. 00912. Los socios de esta corporación por información y creencia son el Sr. Luis Rubí, el Sr. Ernesto Rodríguez y el Sr. Carlos González. Erluka se dedica, por información y creencia, al desarrollo de obras de construcción.

4. Newport Bonding es una corporación creada al amparo de las Leyes de las Leyes del Estado Libre Asociado de Puerto Rico que se dedica mayormente a la emisión de fianzas. La dirección de dicha corporación es Plaza Alta Suites, Box 214, Ave. Santa Ana 274, Guaynabo, PR 00969-3304. El teléfono es 787-758-9576.



5. El Doral Bank (Doral) es una institución bancaria autorizada a hacer negocios en Puerto Rico. Doral es la institución bancaria que financia ambos de construcción. La dirección de esta es PO Box 308, Cataño, PR 00963-0308.

6. El Sr. Carlos González es una persona natural, mayor de edad, casado con la Sra. Nitza Barreto, comerciante y residente en la Calle 13 S 20 de la Urb. Sierra del Río en San Juan, Puerto Rico 00926. El Sr. González es accionista en Erluka y Terraverde.

HECHOS

A. Proyecto Camino Terraverde- Trujillo Alto

7. En o alrededor del 17 de octubre de 2002 GEB suscribió un contrato de arrendamiento de obras con Terraverde.

GEB V. ERLUKA Y OTROS
DEMANDA
PAG. 4

8. Dicho contrato proveía para la construcción de 60 unidades de apartamentos que se conocerían como Camino Terraverde.

9. Para generar los fondos y costear el desarrollo y construcción de dicho proyecto, Terraverde obtuvo financiamiento del Doral Bank.

10. El contrato se hizo por un precio original de $4,800,000.00.

11. La dueña de obra, Terraverde, suministró los terrenos, los planos y las especificaciones por los que se edificarían los apartamentos.

12. Terraverde requirió en el contrato de construcción que GEB prestara fianza de pago y ejecución para el proyecto de referencia.

13. De conformidad con las exigencias del contrato de construcción, GEB solicitó de Newport que emitiese fianza de ejecución y pago para el proyecto camino del Lago.

14. En o alrededor del 27 de octubre de 2003 Newport emitió fianzas de pago y ejecución (payment and performance bond) número 2003-1519 a favor de GEB como contratista del proyecto de Camino de Terraverde.



15. También Newport emitió un *rider* denominado *Lender's Dual Obligee Rider to Performance and Payment Bond* mediante el cual el Doral Bank se convirtió en beneficiario de las fianzas emitidas.

B. Chalets Paseo Real- Rio Piedras:

16. En o alrededor del 3 de septiembre de 2003 GEB suscribió un contrato de arrendamiento de obras con Erluka.

17. Dicho contrato proveía para la construcción de 36 apartamentos de vivienda en lo que se conocería como Chalets Paseo Real en Río Piedras.

18. Para generar los fondos y costear el desarrollo y construcción de dicho proyecto, Erluka obtuvo financiamiento del Doral Bank.

19. El contrato es por un precio original de 2,365,000.00

20. La dueña de obra, Erluka, suministró los terrenos, las especificaciones y los planos por los que se edificarían los apartamentos.

GEB V. ERLUKA Y OTROS
DEMANDA
PAG. 5

21. Erluka requirió en el contrato de construcción que GEB prestara fianza de pago y ejecución para el proyecto de Río Piedras.

22. De conformidad con las exigencias del contrato de construcción, GEB solicitó de Newport que emitiese fianza de ejecución y pago para el proyecto Chalets Paseo Real en Río Piedras

23. En o alrededor del 17 de diciembre de 2003 Newport emitió fianzas de pago y ejecución (payment and performance bond) número 2003-1771 a favor de GEB como contratista del proyecto de Chalets Paseo Real en Río Piedras.

24. También Newport emitió un *rider* denominado *Lender's Dual Obligee Rider to Performance and Payment Bond* mediante el cual el Doral Bank se convirtió en beneficiario de las fianzas emitidas

### HECHOS COMUNES A TODAS LAS CAUSAS DE ACCIÓN

25. Como parte de los acuerdos GEB, su presidente, Sr. Efraín Rivera Soler y su esposa la Sra. Brenda Nieves suscribieron un contrato de indemnización a favor de Newport titulado *"General Agreement of Indemnity"*.



26. Durante la ejecución de ambas obra, GEB se percató de varios errores o defectos en la misma, entre los que se encuentran los siguientes:

    a. Errores en planos;

    b. Condiciones del subsuelo inestables más extensas de lo esperado;

    c. Negativa del Erluka y Terraverde a extender el tiempo contractual y/o a emitir órdenes de cambio a las que tiene derecho el contratista (GEB);

    d. Errores de diseño, entre otros.

27. Lo expuesto en el párrafo anterior motivó que GEB incurriera en costos adicionales que los demandaos se rehúsan reconocer como órdenes de cambio y/o extensiones de tiempo al contrato de arrendamiento de obra, provocando gastos adicionales extendidos a GEB a los contemplados como parte de los contratos de construcción.

GEB V. ERLUKA Y OTROS
DEMANDA
PAG. 6

28. La actitud desplegada y la negativa de los demandados a reconocer los derechos de GEB a extensiones de tiempo y gastos adicionales bajo el contrato de construcción provocaron una merma en la capacidad económica de GEB, causando una disminución en el flujo de efectivo de ésta.

29. A consecuencia de la conducta de mala fe de los demandados y la falta de extensiones de tiempo, el término original de la ejecución de los proyectos en cuestión fue transcurriendo fatalmente, provocando, injustificadamente, que el 10 de febrero de 2005, Terraverde y Erluka le enviaran una carta de *cura* (cured period) en la que alegaron que GEB no tenía el personal y la capacidad para hacer los proyectos.

30. Así las cosas GEB contestó ambas cartas e informó sobre los problemas que había habido en ambos proyectos.

31. Específicamente en el proyecto de Río Piedras hubo errores estructurales que ocasionaron la paralización de la obra y el cambio en el tiempo programado de ejecución (*schedule*). Luego se hizo una análisis del problema y el Ing. José Mediavilla determinó que era un problema de diseño. Esa situación aumentó los costos de GEB de construcción por alrededor de $80,000.00, los cuales no eran su responsabilidad.



32. En el proyecto de Trujillo Alto, Terraverde tenía contemplado el diseño y construcción de un muro de contención de bloques para que las estructuras no se deslizaran y para proteger el parking. Posteriormente, la gerencia de Terraverde solicitó que el susodicho muro se cambiara a un muro de hormigón. Terraverde tardó un año en la toma de dicha decisión

33. GEB fue expulsado de los proyectos en 2 de marzo de 2005. Así las cosas se le informó a la fiadora, Newport, de la situación habida con GEB y se le requirió que asumieran la responsabilidad que bajo la fianza tenían.

34. A pesar de que GEB informó y puso a disposición de la fiadora todos los documentos que exponían los eventos aquí contenidos, la fiadora decidió, contrario a sus obligaciones con GEB, asumir y continuar con las ambas obras.

35. GEB sabe y conoce que los demandados han estado trabajando en los

GEB V. ERLUKA Y OTROS
DEMANDA
PAG. 7

obligaciones con GEB, asumir y continuar con las ambas obras.

35. GEB sabe y conoce que los demandados han estado trabajando en los proyectos y pagando por trabajos cantidades exorbitantes de dinero a expensas de luego cobrarle a GEB, al Sr. Rivera Soler y su esposa por las deficiencias de dinero que puedan quedar.

36. La actitud y conducta de Newport, además de ser contrarias a sus responsabilidades con su fiado, han causado y continúan causando daños a la parte demandante.

37. Debido a los eventos contenidos en esta demanda, varios suplidores y materialistas de GEB en ambos proyectos han reclamado y exigido el pago de sus respectivas acreencias a GEB. Dichas reclamaciones suman alrededor de $300,000.

38. El Sr. Carlos González, luego de la petición de pago que le hizo el Sr. Rivera por los trabajos hechos en su casa y oficina, comenzó una conducta dirigida a afectar y atrasar la obra que culminó en la declaración de incumplimiento ilegal que se le hiciera a GEB en ambos proyectos.



39. El Sr. González comenzó a indicar a Doral que ni emitiera los pagos a GEB por trabajo hecho y aceptado conforme a contrato e incluso intervino en unas solicitudes de línea de crédito que GEB y los esposos Rivera-Nieves estaban solicitando al banco para ayudarse a salir de la situación económica en que tanto Erluka y Terraverde, con sus incumplimientos le habían causado. Esa transacción nunca pudo concretizarse.

40. Doral es responsable ante GEB por no haber emitido pagos por trabajos que estaban realizados conforme a contrato y aceptados por el desarrollador.

## PRIMERA CAUSA DE ACCIÓN COBRO DE DINERO

41. Se incorporan por referencia las alegaciones contenidas en los párrafos uno (1) al cuarenta (40) como si las mismas estuviesen aquí literalmente transcritas.

42. Erluka al momento en que sacó a GEB de la obra adeudaba a ésta por trabajo ejecutado y no pagado la cantidad de $172,670.00. Por retenido de dicha obra adeuda a GEB la cantidad de $ 160,864.00.

GEB V. ERLUKA Y OTROS
DEMANDA
PAG. 8

43. Terraverde adeudaba al momento en que sacó a GEB de la obra la cantidad de $389,169.00 por obra ejecutada y no pagada. Por retenido de dicha obra adeuda a GEB la cantidad de $394,862.00.

44. Las cuantías adeudadas por Terraverde y Erluka están vencidas, y son líquidas y exigibles.

45. A pesar de múltiples gestiones para obtener el recobro de las cuantías desembolsadas, los demandados no ha pagado dichas cuantías.

### SEGUNDA CAUSA DE ACCIÓN
### INCUMPLIMIENTO DE CONTRATO

46. Se incorporan por referencia las alegaciones contenidas en los párrafos uno (1) al cuarenta y cinco(45) como si las mismas estuviesen aquí literalmente transcritas.

47. Tanto Erluka como Terraverde incumplieron el contrato de construcción que mantenían con GEB. Esto es, ambas codemandadas sacaron, expulsaron y terminaron los contratos que tenían con GEB sin hacerlo conforme a contrato. Ambas codemandadas entraron al proyecto, sacaron la compañía de seguridad que GEB tenía, cambiaron los candados de la entrada y se apropiaron de todo lo que en los proyectos había.



48. Erluka ni Terraverde hicieron una declaración de incumplimiento (default) adecuada a GEB, incluso declararon en incumplimiento a GEB cuando ellos estaban en incumplimiento por no haber efectuado los pagos que estaban vencidos, líquidos y exigibles.

49. Las demandadas no otorgaron los cambios de orden, extensiones de tiempo y correcciones en los planos y diseños según surgían las controversias y situaciones, todo esto ocasionando pérdida de tiempo, dinero y eficiencia en la ejecución de la obra a GEB.

50. Los daños causados por Erluka y Terraverde, se estiman en una suma no menor de $4,000,000.00.

### TERCERA CAUSA DE ACCIÓN
### INDEMNIZACIÓN

GEB V. ERLUKA Y OTROS
DEMANDA
PAG. 9

51. Se incorporan por referencia las alegaciones contenidas en los párrafos uno (1) al cincuenta (50) como si las mismas estuviesen aquí literalmente transcritas.

52. GEB se ha visto involucrada en diversos casos, litigios y demandas ante los Tribunales de Puerto Rico debido a los incumplimientos de los demandados.

53. Estas situaciones han causado prácticamente la bancarrota de GEB.

54. Según indicado anteriormente, las cuantías adeudadas por los codemandados están vencidas, y son líquidas y exigibles.

55. A pesar de múltiples gestiones para obtener el recobro de las cuantías desembolsadas, tanto Terraverde como Erluka se han negado a pagar dichas cuantías.

56. Newport faltó a sus deberes como fiadora de GEB al asumir la terminación de las obras sin tomar en consideración las defensas, derechos y prerrogativas que tenía GEB contra Erluka y Terraverde. Esta acción ocasiona daños a GEB, al Sr. Efraín Rivera y su esposa ya que agrava y aumenta la garantía personal que estos dieron a Newport.

57. Los daños ocasionados por la fiadora a GEB, el Sr. Rivera Soler y su esposa ascienden a $1,500,000.00.

POR TODO LO CUAL, se solicita muy respetuosamente del Honorable Tribunal que declare Con Lugar la presente demanda, y por consiguiente:

1. determine que Erluka adeuda a Geb la cantidad de $333,534.00

2. determine y ordene a Terraverde a pagar a GEB la cantidad de $784,031.00

3. que determine que los demandados ocasionaron atrasos en el proyecto que provocaron el aumento en costos y gastos para GEB por $ 3,000,000.00

4. determine que Newport faltó a sus responsabilidades como fiadora de GEB y que esa conducta causó daos a GEB y al matromonio Rivera- Nieves por la cantidad de $ 1,500,00.00

5. que ordene el pago de los intereses correspondientes sobre las cuantías adeudadas desde el momento en que debieron ser satisfechas;

6. ordene el pago de las costas, gastos, intereses y una suma razonable para honorarios de abogado;

GEB V. ERLUKA Y OTROS
DEMANDA
PAG. 10

7. así como provea cualquier otra determinación que en Derecho y equidad proceda.

RESPETUOSAMENTE SOMETIDO.

En San Juan, Puerto Rico, a 10 de noviembre de 2005.

**MALU MUÑIZ NIEVES LAW OFFICES**
P O BOX 194942
SAN JUAN, PUERTO RICO 00919-4942
TEL. 787-753-6778
FAX 787-759-6320

MALÚ MUÑIZ NIEVES
COLEGIADA 13844
malumuniz@prtc.net

UFRET LAW FIRM
CAPITAL CENTER BUILDING,
SOUTH TOWER
239 ARTERIAL HOSTOS AVE.
SUITE 305
SAN JUAN, PR 00918-1476
TEL. 787-250-1420

GERMÁN R. UFRET PÉREZ
COLEGIADO 13926


